IN THE CHANCERY COURT FOR PUTNAM COUNTY, TENNESSEE

| | |
|---|---|
| ORECK CORPORATION; ORECK DIRECT, LLC; ORECK HOMECARE, LLC; ORECK HOLDINGS, LLC; ASP ORECK, INC.; AND ORECK HOLDCO 1, INC.; <br><br> Plaintiffs, <br><br> v. <br><br> HCC GLOBAL FINANCIAL PRODUCTS, LLC; AND U.S. SPECIALTY INSURANCE COMPANY; <br><br> Defendants. | No. 2012-148 <br><br> JURY DEMAND <br><br> FILED 4-30-2012 <br> TIME 3:30 pm <br> LINDA F. REEDER, CLERK & MASTER <br> BY Cynthia Pullin <br> DEPUTY CLERK & MASTER |

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

The plaintiffs, Oreck Corporation; Oreck Direct, LLC; Oreck Homecare, LLC; Oreck Holdings, LLC; ASP Oreck, Inc.; and Oreck Holdco 1, Inc. (collectively, "Oreck" or "Plaintiffs"), for their causes of action against defendants, HCC Global Financial Products, LLC ("HCC Global"); and U.S. Specialty Insurance Company ("USSIC") (collectively, "Defendants"), state as follows:

### NATURE OF ACTION

This action arises from Defendants' wrongful denial of insurance coverage to Oreck for six putative class actions and a formal investigation by the federal government alleging false advertising in the marketing of certain vacuums and air purifiers. Oreck paid substantial premiums for the liability insurance policies at issue to protect itself (and its officers and directors) from allegations of wrongdoing, such as the false advertising claims at issue. Despite Defendants' admission that false advertising claims fall within the broad grant of coverage in the

**EXHIBIT A**

policies, they insist that a narrow and clearly inapplicable exclusion for product liability claims defeats Oreck's claim for coverage. Because the products liability exclusion does not bar coverage for false advertising claims, Oreck is entitled to a declaration that: (1) USSIC breached its contracts of insurance with Oreck; (2) HCC Global negligently denied coverage to Oreck; (3) in the alternative, HCC Global tortiously interfered with Oreck's insurance contracts with USSIC; and (4) Defendants must defend and indemnify Oreck and that Defendants' refusal to do so breached USSIC contracts of insurance with Oreck.

## PARTIES

1. Oreck Corporation is organized under the laws of Delaware and has its principal place of business in Nashville, Tennessee. Oreck Corporation is a wholly owned subsidiary of ASP Oreck, Inc.

2. Oreck Direct, LLC is organized under the laws of Delaware and has its principal place of business in Cookeville, Tennessee. Oreck Direct, LLC is a wholly owned subsidiary of Oreck Corporation.

3. Oreck Homecare, LLC is organized under the laws of Delaware and has its principal place of business in Nashville, Tennessee. Oreck Homecare, LLC is a wholly owned subsidiary of Oreck Corporation.

4. Oreck Holdings, LLC is organized under the laws of Delaware and has its principal place of business in Cheyenne, Wyoming. Oreck Holdings, LLC is a wholly owned subsidiary of Oreck Corporation.

5. ASP Oreck, Inc. is organized under the laws of Delaware and has its principal place of business in Nashville, Tennessee.

6. Oreck Holdco1, Inc. is organized under the laws of Delaware and has its principal place of business in Nashville, Tennessee.

7. HCC Global Financial Products, LLC ("HCC Global") is organized under the laws of Delaware and has its principal place of business at 8 Forest Park Drive, Farmington, Connecticut 06032. HCC Global is the corporate parent of USSIC, which is a wholly-owned subsidiary of HCC Global. HCC Global is the Claims Administrator for U.S. Specialty Insurance Company. HCC Global may be served with process by delivering summons and a copy of the complaint to the Tennessee Secretary of State and/or the Tennessee Insurance Commissioner and/or through its registered agent for service of process, National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

8. Upon information and belief, U.S. Specialty Insurance Company ("USSIC") is organized under the laws of Texas and has its principal place of business in Houston, Texas. USSIC is a wholly owned subsidiary of HCC Global, which also serves as Claims Administrator for USSIC. Upon information and belief, USSIC is an unauthorized foreign insurer. USSIC may be served with process by delivering summons and a copy of the complaint to the Tennessee Insurance Commissioner.

9. This Court has personal jurisdiction over Defendants pursuant to Tennessee's long-arm statute, Tenn. Code § 20-2-214, because Oreck's causes of action arise from USSIC's entry into a contract of insurance covering persons and risks located in Tennessee and from HCC Global's claims administration of Oreck's claim. Venue is proper here pursuant to Tenn. Code § 20-4-104 because Oreck's causes of action accrued in substantial part in Putnam County, Tennessee.

## FACTS

10. The insurance policies at issue in this case, The MAG Directors, Officers and Organization Liability Insurance Policy, policy no. 14-MGU-08-A17951, effective November 17, 2008 through March 19, 2016 ("the ASP Policy"), and policy no. 14-MGU-11-A23434, effective March 19, 2011 through March 19, 2012 ("the Oreck Holdco Policy") (collectively, the "Policies"), insure Oreck for "**Loss** arising from **Claims** first made ... during the Policy Period ... for **Wrongful Acts**." Policies at INSURING AGREEMENT (B). The term **Wrongful Acts** is broadly defined to include, *inter alia*, "any other actual or alleged act, error, misstatement, misleading statement, omission or breach of duty." Policies at DEFINITION (U). (The Policies are attached as Exhibit A.)

11. The Policies were delivered to a resident of Tennessee.

12. On December 10, 2009, the Federal Trade Commission ("FTC") issued a Civil Investigative Demand to Oreck Corporation regarding Oreck's marketing and sale of the Oreck Halo vacuum and/or the Oreck ProShield Plus air purifier and other Oreck air purifier products ("the FTC Action"). The FTC alleged in its proposed complaint that Oreck was falsely advertising that these products could eliminate germs and allergens. On May 19, 2011, Oreck and the FTC settled the FTC Action through entry of a Consent Order and a $750,000 cash payment with no admission of wrongdoing by Oreck. Oreck paid that amount to the FTC on June 1, 2011. Oreck incurred substantial defense costs defending the FTC Action.

13. Between May 10, 2011 and October 21, 2011, six putative class action lawsuits were filed against Oreck alleging that Oreck falsely advertised the capabilities of the Oreck Halo vacuum and/or the Oreck ProShield Plus air purifier and other Oreck air purifier products to eliminate germs and allergens: *Gina Chenier, et al. v. Oreck Corporation*, Case No.

CV11-05321 CAS (JEMx) (C.D. Cal.) (filed June 24, 2011); Roxy *Edge, et al. v. Oreck Corporation, et al.*, Case No. 2:11-cv-08725-CAS-JEM (C.D. Cal.) (filed October 21, 2011); Teri *Latta v. Oreck Corporation*, Case No. 5:11-cv-01082-CAS-JEM (C.D. Cal.) (filed July 11, 2011); *Edward Paragin v. Oreck Corporation, et al.*, Case No. 1:11-cv-00580-SAS-KLL (S.D. Ohio) (filed August 23, 2011); *Gregory Ruscitti v. Oreck Corporation*, Case No. 1:11-cv-03121 (N.D. Ill.) (filed May 10, 2011); and *Scott Stiepleman v. Oreck Corporation, et al.*, Case No. 11-61861-WPD (S.D. Fla.) (filed August 19, 2011) (collectively, "the Class Actions"). The *Stiepleman* action also named an Oreck employee, David Oreck, as a defendant. The Class Actions were subsequently consolidated in the United States District Court for the Central District of California.

14. The allegations of false advertising fell within the Policies' broad coverage grant because they alleged "any other actual or alleged act, error, misstatement, misleading statement, omission, or breach of duty." In light of the broad coverage and because the Policies did not include a false advertising exclusion, Oreck sought coverage for the Class Actions as well as the FTC Action from the Defendants. On November 17, 2011, pursuant to the Policies, Oreck notified HCC Global of the Class Actions and the FTC Action (collectively, the "Actions"), and requested that USSIC indemnify Oreck for its defense costs in the Actions, its settlement payment in the FTC Action, and any judgment or settlement in the Class Actions.

15. On February 17, 2012, HCC Global denied coverage for the Actions based primarily on the Products Liability Exclusion in Endorsement No. 6 of the ASP Policy and Endorsement No. 12 of the Oreck Holdco Policy ("the Products Liability Exclusion"). The Products Liability Exclusion, entitled "PRODUCT LIABILITY EXCLUSION WITH A-SIDE AND SECURITIES CLAIM CARVEBACKS," states that "the Insurer will not be liable to make

any payment of **Loss** in connection with a **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency or inadequacy in the design or manufacture of such product."

16. The language in the Products Liability Exclusion regarding product malfunction due to a design or manufacturing defect describes a products liability claim, not a false advertising claim. As defined by statute in Tennessee, a products liability action "includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn. Code Ann. § 29-18-102(6) (defining "product liability action"). The terms used in the Products Liability Exclusion – malfunction, design defect, and manufacturing defect– are regularly used, and understood, to describe product liability claims and not to describe false advertising claims.

17. A products liability action in Tennessee, as in many jurisdictions, requires that the plaintiff suffered personal injury, death or property damage other than to the product itself. The Class Actions, however, do not contain any allegations of personal injury or death or damage to other property.

18. The Products Liability Exclusion, with its references to malfunction, defective design and defective manufacture, only excludes coverage for product liability actions.

19. If the Products Liability exclusion were interpreted as broadly as Defendants claim, the Policy would provide significantly reduced coverage to Oreck, which is in the business of manufacturing and selling products. Every claim could somehow relate to

Oreck's products; and therefore, under Defendants' interpretation, the Products Liability Exclusion would bar coverage unless the claim fell within the two exceptions for Side A coverage and securities claims.

20. Oreck did not reasonably expect that the Products Liability Exclusion would preclude coverage for any claims other than traditional or typical product liability claims.

21. Although the Products Liability Exclusion's exception for securities claims is irrelevant to Oreck, which is a privately held company, the exception for Side A coverage is relevant. The Policy plainly states that the Product Liability Exclusion "shall not apply to **Loss** under INSURING AGREEMENT (A)." Policy Endorsement 6. Under INSURING AGREEMENT (A), USSIC agreed to "pay to or on behalf of the **Insured Persons Loss** arising from Claims first made against them during the Policy Period or Discovery Period (if applicable) for **Wrongful Acts**." The term **Insured Persons** is defined as "any past, present, or future director, officer, managing member, manager or **Employee** of the **Insured Organization**."

22. The *Stiepelman* complaint names David Oreck personally as a defendant. Mr. Oreck is an Oreck employee. Because Mr. Oreck is an Oreck employee, he is an **Insured Person** within the scope of Insuring Agreement A. Because the complaint names an **Insured Person** within the scope of Insuring Agreement A, the Product Liability Exclusion does not exclude coverage for *any* claims against Mr. Oreck. Because the *Stiepelman* complaint names Mr. Oreck as a defendant, the Products Liability Exclusion cannot serve as a basis for denying coverage for the *Stiepelman* action.

23. On February 24, 2012, Oreck again requested reimbursement and indemnity from Defendants for its defense costs, and advised HCC Global of a mediation between Oreck and the Class Action plaintiffs scheduled for April 9-10, 2012. Oreck requested Defendants' participation in the mediation and/or settlement authority if the Defendants chose not to attend the mediation. Oreck also urged Defendants to consult with Oreck's defense counsel to address any questions that they might have. Defendants did not agree to any of Oreck's requests.

24. On March 7, 2012, Oreck reiterated its request for coverage, explaining that the Actions were based on false advertising, and not products liability, and that false advertising claims fall within the broad coverage grant in the Policies for misstatements or misleading statements. Oreck again requested that Defendants participate in the upcoming mediation, grant Oreck settlement authority, or at least speak to defense counsel regarding the case. Defendants again refused all of Oreck's requests.

25. On April 5, 2012, HCC Global, through outside counsel, reasserted its earlier denial of coverage. Although HCC Global conceded that the Policies insure false advertising claims, it reiterated its previous denial of coverage for the Actions based primarily on the Product Liability Exclusion.

26. Without any support or assistance from Defendants, Oreck participated in the mediation with the plaintiffs in the Class Actions on April 9-10, 2012. Defendants' coverage denial made it more difficult for Oreck to negotiate with the plaintiffs in the Class Actions. Because Defendants did not participate in the mediation, Oreck could not settle the Class Actions.

27. On April 17, 2012, District Judge Snyder of the Central District of California issued an order consolidating the Class Actions for purposes of discovery and appointing lead interim class counsel. In so doing, the court found that "the gravamen of each action is that Oreck misled consumers into purchasing products that did not perform as advertised." April 17, 2012 Order, Exh. B at 6. The court reached its conclusion by citing allegations from each of the complaints, which, according to the court, "uniformly involve alleged misrepresentations Oreck made in advertising that the Halo vacuum cleaner and air purifiers could kill certain bacteria and viruses." Order at 5.

28. By letter dated April 20, 2012, Oreck advised Defendants of Judge Snyder's order and again sought coverage for the Class Actions as well as the FTC Action.

29. Even after this order recognizing that the Class Actions allege false advertising claims, Defendants continue to refuse to pay Oreck for its losses under the Policies.

30. Defendants' refusal to pay Oreck for its losses under the Policies is vexatious and without reasonable cause.

31. Oreck has continued to keep Defendants apprised of the status of the litigation and has continued to request defense and indemnity under the Policies.

## COUNT I

### (BREACH OF CONTRACT AGAINST USSIC)

32. Plaintiffs incorporate and re-allege all preceding paragraphs as if fully set forth herein.

33. The Policies insure Oreck against false advertising claims.

34. The Actions allege that Oreck falsely advertised the capability of the Oreck Halo vacuum and/or the Oreck ProShield Plus air purifier and other Oreck air purifier products.

35. Oreck submitted a claim to HCC Global pursuant to the Policies for defense and indemnity of the Actions by USSIC.

36. USSIC refused to honor the coverage obligations under the Policies through a letter from HCC Global.

37. USSIC's refusal to honor the coverage obligations under the Policies, as communicated by HCC Global, is a breach of the duty owed to Oreck under the Policies.

38. Oreck has sustained substantial damages as a direct and proximate result of USSIC's breach of the Policies, as communicated by HCC Global, including deprivation of the benefits for which Oreck paid substantial premiums to USSIC.

## COUNT II

### (NEGLIGENCE AGAINST HCC GLOBAL)

39. Plaintiffs incorporate and re-allege all preceding paragraphs as if fully set forth herein.

40. An actual and justiciable controversy exists between Oreck and HCC Global regarding USSIC's obligations under the Policies.

41. Oreck has demanded that USSIC indemnify Oreck for (a) its defense costs in the Actions; (b) its settlement payment in the FTC Action; and (c) any judgment or settlement in the Class Actions.

42. HCC Global has wrongfully denied Oreck's claim for coverage under the Policies.

43. HCC Global is the corporate parent of USSIC, which is a wholly-owned subsidiary of HCC Global. As the corporate parent of USSIC, HCC Global has a financial interest in the disposition of Oreck's claim. Upon information and belief, because HCC Global denied coverage to Oreck, it also could have granted coverage to Oreck. HCC Global's control over Oreck's claim creates a special relationship between HCC Global and Oreck.

44. HCC Global had a duty to act reasonably to protect Oreck from an unreasonable risk of harm.

45. Even after the court handling the Class Actions stated that "the gravamen of each action is that Oreck misled consumers into purchasing products that did not perform as advertised" (April 17, 2012 Order, Exh. B at 6) and cited allegations from each of the complaints, which, according to the court, "uniformly involve alleged misrepresentations Oreck made in advertising that the Halo vacuum cleaner and air purifiers could kill certain bacteria and viruses" (Order at 5), HCC Global did not change its denial position.

46. HCC Global's denial of coverage is negligent because the Policies plainly require USSIC to indemnify Oreck for (a) its defense costs in the Actions; (b) its settlement payment in the FTC Action; and (c) any judgment or settlement in the Class Actions.

47. Oreck has sustained substantial damages as a direct and proximate result of HCC Global's negligence, including deprivation of the benefits for which Oreck paid substantial premiums to USSIC.

## COUNT III

## (IN THE ALTERNATIVE; TORTIOUS INTERFERENCE WITH CONTRACT AGAINST HCC GLOBAL)

48. Plaintiffs incorporate and re-allege all preceding paragraphs as if fully set forth herein.

49. If HCC Global does not owe a duty to Oreck and is not liable in negligence to Oreck, then it tortiously interfered with Oreck's insurance contracts with USSIC by denying coverage to Oreck for the Actions.

50. HCC Global knew of the existence of the Policies.

51. HCC Global intended to induce USSIC to breach the Policies by denying coverage for the Actions.

52. HCC Global acted maliciously by denying coverage for the Actions based on the Products Liability Exclusion, which on its face does not encompass false advertising claims.

53. The Policies were breached.

54. HCC Global's denial of coverage proximately caused the breach of the Policies.

55. Oreck has sustained substantial damages as a direct and proximate result of HCC Global's tortious interference with Oreck's contracts of insurance with USSIC, including deprivation of the benefits for which Oreck paid substantial premiums to USSIC.

Case 2:12-cv-00083  Document 1-1  Filed 08/13/12  Page 12 of 14 PageID #: 23

## COUNT IV

### (DECLARATORY JUDGMENT AGAINST DEFENDANTS)

56. Plaintiffs incorporate and re-allege all preceding paragraphs as if fully set forth herein.

57. An actual and justiciable controversy exists between Oreck and Defendants regarding USSIC's obligations under the Policies.

58. Oreck has demanded that USSIC indemnify Oreck for (a) its defense costs in the Actions; (b) its settlement payment in the FTC Action; and (c) any judgment or settlement in the Class Actions.

59. HCC Global has wrongfully denied Oreck's claim for coverage under the Policies.

60. Oreck petitions this Court to declare that Defendants have an obligation to indemnify Oreck for (a) its defense costs in the Actions; (b) its settlement payment in the FTC Action; and (c) any judgment or settlement in the Class Actions.

### DEMAND FOR JURY TRIAL

61. Oreck demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A. That Plaintiffs be awarded compensatory damages against defendant USSIC in an amount to be shown at trial for breach of contract;

Case 2:12-cv-00083   Document 1-1   Filed 08/13/12   Page 13 of 14 PageID #: 24

B. That Plaintiffs be awarded compensatory damages against defendant HCC Global in an amount to be shown at trial for negligence;

C. That Plaintiffs be awarded compensatory and punitive damages against defendant HCC Global in an amount to be shown at trial for tortious interference with contract;

D. That this Court award Plaintiffs pre-judgment and post-judgment interest;

E. That this Court award Plaintiffs the costs and expenses (including attorneys' fees pursuant to Tenn. Code § 56-7-105(b)) incurred in bringing this action;

F. That this Court declare that USSIC has an obligation to indemnify Oreck for (a) its defense costs in the Actions; (b) its settlement payment in the FTC Action; and (c) any judgment or settlement in the Class Actions; and

G. For such other and further relief as this Court deems just and equitable.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Thor Y. Urness*

Thor Y. Urness (No. 013641)
Heather Howell Wright (No. 030649)
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, Tennessee 37203
(615) 252-2384

*Attorneys for Plaintiffs*

OF COUNSEL
Katherine J. Henry
Bradley Arant Boult Cummings LLP
1615 L Street NW
Washington, D.C. 20036
(202) 719-8244